[Civ. No. 6756. Third Dist. Feb. 27, 1943.]

JOSEPHINE B. GWINN, Respondent, v. M. GOLDMAN, Appellant.

Lounibos & Lounibos and Heim Goldman for Appellant.

Lewis H. Cromwell, Barrett & McConnell and A. Dal Thomson for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against him in a suit for unlawful detention of a leased store building in Petaluma. It is conceded that the defendant held possession of the property after the expiration of the lease, and that he owes plaintiff two months' rent aggregating the sum of $640. The court also allowed plaintiff an item of $200 as special damages, sustained by her on account of the delay in surrendering possession of the property. Pursuant to section 1174 of the Code of Civil Procedure, the court rendered judgment against

the defendant for treble the aggregate amount of those two sums.

The defendant contends that the court abused its discretion in trebling the sums of said unpaid rent and special damages, for the reason that the defendant's withholding of the property after the termination of the lease was not wilful or intentional, but was the result of conditions over which he had no control. It is also asserted that the item of $200 special damages was neither pleaded nor adequately proved at the trial.

The plaintiff owns the store building at 119 Main Street in Petaluma which had been rented to the defendant for a period of seventeen years. The defendant conducted a ladies' department store in that place of business under the name of "The Leader." In January, 1940, he had a conversation with the plaintiff in which he told her he was going to construct his own store building and that he would not renew his lease or occupy her building beyond that year. He planned to erect his own building at a cost of over $48,000 and therefore decided not to renew his lease with the plaintiff.

In December, 1939, the plaintiff notified the defendant in writing that since he had failed to renew his lease, possession of the property would be thenceforth deemed to be held on a basis of tenancy from month to month at a rental of $320 per month, payable in advance. The defendant consented to that agreement. Assuming that the property would be promptly vacated, the plaintiff executed a written contract on March 26, 1940, to lease the property to J. C. Penney Company for a term of eleven years from March 1, 1941, at an annually increasing rental, in excess of $425 per month, after the first year. As part consideration for that lease, the plaintiff agreed to remodel the building at a considerable expense. In June, 1940, the defendant was served with notice terminating his lease and requiring him to vacate the premises in September of that year. At the request of the defendant, the time to surrender possession of the premises was extended to October of that year. The defendant failed to surrender possession of the property and the plaintiff again served notice upon him December 30, 1940, terminating the lease. After conference, as a compromise, the plaintiff and defendant executed a written temporary lease on March 20, 1941, at $320 per month, terminating May 31, 1941, in which instrument the defendant agreed to remove his stock of goods

from the building and to surrender possession thereof on or before May 31st. Relying upon these various promises to vacate the premises, and in accordance with the previous agreement with J. C. Penney Company to remodel the store building at a cost of $11,000 to conform with the requirements of its lease, the plaintiff signed an agreement with Henry Brown, a building contractor, on January 31, 1941, to deliver to him possession of the building on February 1st for the performance of that work, with a stipulation for completion of the contract within forty-two days. That contract provided that plaintiff would pay Brown $200 additional for each month, beginning with March, during which the possession of the building was withheld from the contractor. The defendant remained in possession to the time of the trial of this case on July 17, 1941. The plaintiff sustained a loss of several hundred dollars on that account.

In spite of defendant's knowledge of the necessity for prompt action on his part to secure another place of business or to complete his own building so as to vacate plaintiff's premises before the lease expired, he failed to let a contract for the erecting of his own structure for a whole year after securing that information. In January, 1940, he knew that he was expected to move his merchandise before the end of that year. He did not contract for the construction of his own building until January 10, 1941. He might have remodeled or adapted some other suitable building for the temporary use of his business. But he made no effort to do so. He executed an agreement with William D. Rapp, a building contractor, on January 10, 1941, to complete his structure in Petaluma at a cost of about $48,000, within 135 days. That contract allowed until May 25th to complete the building, independently of any possible unforeseen delays, which was only five days before the expiration of his lease. The building was not completed for some time thereafter.

After notice to surrender possession of the property, this suit in unlawful detainer was commenced June 2, 1941, under section 1161 of the Code of Civil Procedure. The amended complaint alleges plaintiff's ownership of the building, the execution of the last lease on March 20, 1941, the termination of that lease and the unlawful withholding of possession by the defendant. It also alleges that the reasonable rental value of the premises is $15 per day and that plaintiff sustained damages by reason of said unlawful detention of the

property. The prayer of the complaint asks for damages in the sum of $15 per day for each day said property is withheld from the owner, and that said unpaid rent and damages be trebled as provided by section 1174 of the Code of Civil Procedure.

The answer denies the material allegations of the amended complaint, and affirmatively alleges that the defendant retained possession of the premises after the termination of the lease on May 31, 1941, through no fault of his own, but on account of unavoidable delay in completing the construction of his own store building, caused by unusual storms and the existence of a national emergency preventing the securing of necessary skilled labor. It is also asserted the defendant was unable to secure another suitable store building in Petaluma with adequate floor space to accommodate his stock of goods. The defendant's answer specifically denies ''that plaintiff has sustained, or is sustaining, any damages at all by reason of his holding over.''

The court adopted findings favorable to the plaintiff. It was determined that the lease of March 20, 1941, terminated May 31st, and that the defendant ''Wilfully held over and continued in possession of said premises and now wilfully holds possession of said premises without the permission of the plaintiff and contrary to the terms of said agreement of lease. That the holding over was and is deliberate, intentional and obstinate, with knowledge that the tenancy was terminated and that the defendant was holding over without and against the consent of the plaintiff, and that by reason thereof the plaintiff is entitled to have judgment for treble the amount of damages herein found due plaintiff from defendant.''

The court further found that the defendant was indebted to plaintiff for unpaid rent of said premises in the sum of $640, and that plaintiff had suffered damages in the further sum of $200 as increased cost, for the month of June, 1941, of remodeling her building under her contract with Brown, due to the defendant's failure to surrender possession of the property pursuant to the terms of his lease.

It is true the court found since May 31, 1941, there was no available building in Petaluma of sufficient floor space to accommodate defendant's stock of merchandise adequately. But in that regard, the court further found that ''it is not true that defendant continues in possession of the store prem-

ises . . . tl rough no fault of his own . . . and it is not true that his holding over is entirely due to Acts of God and labor shortages preventing the completion of his new building.'' But the court did add that, ''due to said weather conditions and the shortage of labor and through no fault of his own, *defendant's new building was not completed within the agreed time.*'' (Italics added.)

Judgment was rendered accordingly against the defendant for treble the amount of unpaid rental and special damages in the aggregate sum of $2,520. From that judgment this appeal was perfected.

On appeal it is conceded by the defendant that he retained possession of the premises after the termination of the lease, and that he owed plaintiff unpaid rental in the sum of $640. But it is contended the court abused its discretion in trebling the damages, and that plaintiff neither alleged nor adequately proved the item of special damages in the sum of $200.

The findings and judgment justifying treble damages, in the discretion of the trial judge, are amply supported by the evidence. ■ The authorization for imposing multiple damages under sections 735 and 1174 of the Code of Civil Procedure for the wilful and intentional withholding of real property after the termination of a lease, is penal in its nature and should receive a strict construction. That right depends largely upon the intention of the lessee in holding over after the termination of the lease. The questions of wilfulness and intention of the lessee in holding over should be determined from his conduct and from the facts and circumstances of the particular case. ■ The trial court possesses a sound discretion to determine from the evidence whether treble damages shall be imposed. (Sec. 1174, Code Civ. Proc.; *Board of Public Service Commrs,* v. *Spear,* 65 Cal.App. 214 [223 P. 423]; *Alden* v. *Mayfield,* 33 Cal.App. 724 [166 P. 382]; *Vatuone* v. *Cannobio,* 4 Cal.App. 422 [88 P. 374]; 12 Cal.Jur. 629, sec. 32.) The second paragraph of section 1174 Code Civ. Proc. provides in part that:

''Judgment against the defendant guilty of . . . unlawful detainer may be entered *in the discretion of the court* either for the amount of the damages and the rent found due, or for three times the amount so found.'' (Italics added.)

■ The rule appears to be well established in California that a lessee of real property who wilfully, deliberately, intentionally and obstinately withholds possession of the property, with knowledge of the termination of his lease and against the will of the landlord, is liable for treble damages.

In the Alden case, *supra,* it is said in that regard:

"The conduct of defendant in refusing to surrender possession was deliberate, intentional and obstinate, with knowledge that the tenancy was terminated, and that he was holding over against the will and consent of the landlord." .

In the case of Board of Public Service Commissioners, *supra,* it is said on page 218:

"The trial court having found that appellant . . . wilfully remained in possession deliberately, intentionally, and, obstinately, with knowledge that the tenancy was terminated, it would have been an abuse of discretion had the judgment been other than for treble the amount of the rent found due.

The question as to whether the lessee remained in possession of the property wilfully and intentionally, after the termination of the lease, is a problem for the determination of the trial court. (111 A.L.R. 99 note.) The decision of the trial judge in that regard should not be disturbed on appeal except for abuse of discretion.

The case of *Field* v. *Walton,* 94 Cal.App. 596 [271 P. 500], and *San Francisco & Suburban Home Building Society* v. *Leonard,* 17 Cal.App. 254, [119 P. 405], upon which the appellant relies, are not in conflict with what we have previously said regarding the discretion of the trial court to award treble damages, under proper circumstances, in an unlawful detention suit. The Field case, *supra,* recognizes the principle previously stated. The judgment in that case wherein the trial judge refused to award plaintiff multiple damages was affirmed. It was held that the refusal to treble the damages, under the facts of that case, was not reversible error because the trial court had a sound discretion to deny or allow multiple damages, with which determination a court of review would not interfere except for abuse thereof. In the Suburban Home Building Society case, the appellate court merely held that the trial court did not err in refusing to instruct a · jury that it might award triple damages under the evidence presented. The court there said it was the sole

province of the judge of the court to determine the question as to whether the lessee wilfully and intentionally failed to surrender possession of the premises, and that the jury had no authority to decide that problem.

Nor is the case of *Feiges* v. *Racine Dry Goods Co.* 231 Wis. 270 [285 N.W. 799, 122 A.L.R. 272], in conflict with the California rule previously stated. In that case the trial court refused to award to plaintiff treble damages for failure of the defendant to remove his merchandise from a leased store building for a period of twenty-six days after the lease expired. On appeal that judgment was affirmed. The trial court found that the defendant was *willing and anxious* to surrender to the plaintiff the possession of the premises in question, at the time fixed by the terms of the lease; that the defendant hired truckmen to remove his merchandise before that time had expired, but that he was prevented from removing it by picketing strikers who "refused to let the defendant move its goods without bloodshed." Such uncontradicted evidence absolutely refutes the possibility that the defendant *wilfully or intentionally* refused to surrender possession of the premises. He even arranged to remove his merchandise before the expiration of the lease, but was prevented from doing so by threats of bloodshed and violence at the hands of striking picketers. He was powerless then to vacate the premises. The court there said:

"The trespass was by the strikers and picketers who against its will forcibly or by threats of violence prevented it from surrendering timely possession of the premises. . . . The only detaining and the only unlawfulness involved are those of the picketers and strikers and their sympathizers. We consider the circuit court was correct in holding as it did."

In the present case the evidence adequately shows that the defendant wilfully, intentionally and stubbornly refused to surrender possession of the store building, knowing the lease had terminated. He remained in control contrary to the will of the plaintiff. He realized that his failure to deliver possession of the building would result in serious loss to the plaintiff, on account of the previous leasing of the property to the J. C. Penney Company. After deciding not to renew his lease, the defendant had a whole year in which to either construct his own building or to locate some other building

suitable for his mercantile business. His unwarranted delay is evidence of wilfulness and intention on his part to remain, regardless of the loss sustained by his landlord on that account. The defendant knew in January, 1940, that the lease would not be extended beyond its term. He then told the plaintiff that he did not intend to renew his lease; that he would not remain in the building beyond that year, and that he intended to construct his own store building. He was first given formal notice that the lease would be terminated in October, 1940. The expiration time was repeatedly extended at the request of the defendant. He was again notified in December, 1940. The temporary lease of March 20, 1941, was a mere compromise extending the time to May 31, 1941. That lease specifically fixed that date as final. The defendant agreed to remove his merchandise and abandon the premises on that date. He failed to do so. ▇ Knowing that he was expected to vacate the premises before the end of the year, as he told the plaintiff he intended to do, and aware of the fact that she had leased the property to another tenant at an increased rental, it was the defendant's duty to exercise diligence either to promptly construct his own building or to arrange to rent another store building so that he could surrender possession before the termination of his lease.

It is true that the court found there was no available building in Petaluma *since May 31, 1941,* with adequate floor space for defendant's stock of mercantile goods. But that does not mean a suitable building could not have been procured *before that time,* or that a building could not have been enlarged or altered so as to accommodate his business if he had exercised timely effort. ▇ The burden was on the defendant to prove that he was unable to procure a suitable building. He had an entire year in which to do so. ▇ The court specifically found that he wilfully, intentionally, deliberately and obstinately refused to surrender possession of the building.

It is true that the court also found that the defendant's new building was not completed "within the agreed time" on account of "weather conditions and the shortage of labor." But the court also found that his holding over was not entirely due to those facts. And the court expressly found that it is not true that the defendant withheld possession of the premises "through no fault of his own." In other words, the court found that the defendant wilfully and deliberately re-

fused to surrender possession of the building for reasons due to his own fault. We assume the court believed the defendant was wilfully guilty of a lack of diligence to provide himself with another building during several months after his knowledge of the fact that he did not intend to renew his lease. There is substantial evidence to support that conclusion. Under such circumstances we may not interfere with the court's discretion in that regard.

■ The court did not err in allowing plaintiff special damages in the sum of $200 as increased cost of remodeling her building under contract with Henry Brown, incurred on account of the failure of the defendant to surrender possession of the property at the termination of his lease. The contract provides for that increase of $200 for each month's delay. That provision is not disputed. Paragraph V of the amended complaint alleges that the reasonable rental value of the property is $15 for each day defendant holds possession after the termination of his lease. It also alleges "plaintiff has sustained and is sustaining damages by reason of the said unlawful detention in the said sum per day." The answer specifically denies "that plaintiff has sustained, or is sustaining, *any damages at all by reason of his holding over.*" The case was tried on the theory that an issue existed regarding plaintiff's damage in the sum of $200 as increased cost of remodeling the building, as provided by the contract. The contract with Brown was received in evidence without objection. The purpose of that offer was specifically stated by plaintiff's attorney as follows:

"I call your particular attention to the provision in regard to the $200 monthly increase to be added to the contract price in the event of delays in receiving possession of the premises, commencing February 1st and running to June 1st."

It is not true that the defendant objected to that evidence of special damages. The objection which the defendant asserts that he previously made was addressed only to plaintiff's examination of Mrs. Gwinn regarding her conversation with the defendant on January 2, 1940, in which he told her "he didn't want the building after 1940." In that regard this colloquy occurred:

"Q. Did he tell you at that time what he intended to do? A. He showed me a picture of an architect's exterior of a

building, which was lying on his desk. . . . He mentioned
something about size, he had been in Santa Rosa looking into
something about heating conditions.''

To the question, ''Did he tell you where he intended to
build?'' defendant's attorney objected ''to this entire line of
testimony.'' The witness was not then questioned regarding
damages growing out of the contract with Brown, nor regard-
ing damages of any nature whatever. The ''line of testimony''
referred to in the objection had nothing to do with the subject
of damages. The evidence to which objection was made re-
ferred only to the conversation between plaintiff and the de-
fendant in January, 1940, with the object of showing that
he knew the plaintiff did not intend to renew the lease beyond
its term which ended in 1940, and that the defendant then
stated he did not want the property after 1940, and intended
to construct a building of his own. The evidence of damages
sustained by virtue of the increased cost of repairing the
building on account of the contract with Brown was intro-
duced later, without objection, at which time the written
agreement was offered in evidence. This contract had no con-
nection with the evidence to which the defendant previously
objected.

Where a complaint in unlawful detainer alleges dam-
ages in general terms on account of a refusal to surrender pos-
session of the premises after the termination of a lease, and
the answer denies, as it does in this case, that any damages
were sustained on account of the holding over, and evidence
of special damages on that account is received without objec-
tion, on the theory that it was a proper issue to be determined,
the defendant is estopped from contending for the first time
on appeal that the evidence is incompetent or that it is at
variance with the pleadings. (2 Cal.Jur. 239, sec. 69; 1 Ban-
croft's Code Pl. 1021, sec. 727.) In the authority last cited
it is said:

''Where, however, the trial is had upon the theory that
there is a material issue, and the court upon the evidence
addressed thereto and received without any or sufficient ob-
jection, finds in accordance with that evidence, a party will
not be allowed for the first time upon appeal to say that
there was no such issue.''

It is true that where evidence is received without objec-

tion, which has no legitimate relation to the issues which form the basis of the action, or is in absolute conflict with the cause of action which is set out in the complaint, it may not be deemed to support a judgment at variance with the pleadings. (*Kredo* v. *Phelps,* 145 Cal. 526 [78 P. 1044]; 1 Bancroft's Code Pl. 1029, sec. 734.) In the Kredo case, it is said:

''Courts have been very liberal in sustaining the findings of the trial court upon issues that were attempted to be made by the pleadings, and treated as so made during the trial, where they were of such a nature as to show some legitimate relation to the nature of the action as set forth in the pleadings. But they have not adopted a rule that would in effect do away with all pleadings. They have not held that a plaintiff could recover upon a different cause of action developed on the trial by the evidence with no amendment of the pleadings.''

The challenged item of $200 on account of the increased cost of remodeling the building, incurred by virtue of defendant's failure to surrender possession of the property, has a direct and legitimate bearing upon the issues. The pleadings and the failure to object at the trial to evidence on that subject amounted to a tendering of that issue. The court did not err in assuming that it was a valid issue and in awarding plaintiff damages for that amount.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.